# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| HENRY D. JOHNSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 16-3022 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on Petitioner Henry D. Johnson's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (d/e 1).   The Motion is GRANTED IN PART and DENIED IN PART.  For the reasons that follow, the Court finds that Petitioner is not entitled to relief on Grounds One, Two, Three, Four, Five, Six, Seven, Nine, Ten, Eleven, and Twelve.  The Government concedes that Petitioner is entitled to relief on Ground Eight, and the Court accepts that concession.

# I. BACKGROUND[1]

On January 20, 2005, a grand jury charged Petitioner by way of a Second Superseding Indictment with engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848 (Count 1); three counts of using a telephone to facilitate a drug offense in violation of 21 U.S.C. § 843(b) (Counts 2, 3, 4); conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 (Count 5); conspiracy to distribute crack cocaine in violation of 21 U.S.C. § 846 (Count 6); conspiracy to maintain a drug-involved building in violation of 21 U.S.C. § 846 (Count 7); maintaining a drug involved building in violation of 21 U.S.C. § 856(a)(2) (Count 8); distribution of marijuana in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(D) (Count 9); and aiding and abetting the distribution of crack cocaine in violation of 21 U.S.C. § 841(a)(1), § 841(b)(1)(B), and 18 U.S.C. § 2 (Count 10). See Crim., Second Superseding Indictment (d/e 41).

---

[1] The Court will refer to docket entries in the criminal case, Case No. 04-30046, as follows: Crim., document name, (d/e number). The Court will refer to the Seventh Circuit docket entries as "Seventh Circuit Case No., document name (d/e number).

At trial, the Government presented evidence that Petitioner was a high-ranking member of the Black P-Stone Nation gang and was "responsible for a large-scale crack, cocaine, and marijuana distribution" operation in Quincy, Illinois. United States v. Johnson, 580 F. App'x 480 (7th Cir. 2014). Several of the participants in the operation testified against Petitioner at trial.

On July 7, 2005, a jury found Petitioner guilty on all ten counts. In February 2006, U.S. District Judge Jeanne Scott denied Petitioner's post-trial motions, entered judgment on the verdict on Counts 1, 2, 3, 4, 8, 9, and 10, and found that the three conspiracy counts, Counts 5, 6, and 7, merged into the judgment of conviction on Count 1. Crim., Opinion at 13 (d/e 137).

In July 2006, Judge Scott sentenced Petitioner to life imprisonment on Count 1; 48 months' imprisonment on Counts 2, 3, and 4; 240 months' imprisonment on Count 8; 60 months' imprisonment on Count 9; and 480 months' imprisonment on Count 10, all to run concurrently. Judge Scott also sentenced Petitioner to five years of supervised release on Counts 1 and 10; one year on Counts 2, 3, and 4; and 3 years on Counts 8 and 9, all

to run concurrently.  See Crim., Judgment (d/e 144).  The Court also imposed a $700 special assessment. Id.  Petitioner appealed.

The Seventh Circuit appointed attorney Kenneth J. Hogan to represent Petitioner on appeal.  See Crim., Order (d/e 149).  In March 2007, Hogan was allowed to withdraw and Kellie Paris-Asaka was substituted as retained counsel for Petitioner. See Seventh Circuit Case No. 06-3048, Order (d/e 15).

On October 15, 2007, Paris-Asaka filed the appellant's brief raising numerous arguments.  Id., Brief (d/e 23).  Oral argument was held on February 21, 2008.  Id. docket notation (d/e 35, 36). On March 11, 2008, the Seventh Circuit issued an order noting that Paris-Asaka filed a brief and presented oral argument that "[t]he panel assigned to the case" found to be "not sufficiently informative." Id., Order (d/e 39). The court appointed Barry Levenstam of Jenner & Block LLP as amicus curiae to re-brief the side of Petitioner.  The Seventh Circuit directed the amicus to address whatever issues he deemed appropriate and re-brief any issues previously raised in the brief by Petitioner.  Id.

On June 27, 2008, Levenstam filed the amicus brief preserving the issues raised in the prior brief but raising and

focusing on three issues: (1) whether the district court committed reversible error by failing to instruct the jury that, to find Petitioner guilty of engaging in a criminal enterprise, the jurors must unanimously agree that Petitioner acted in concert with five or more other persons and occupied a position of organizer, supervisor, or manager with respect to them; (2) whether the district court committed reversible error when it admitted evidence of Petitioner's uncharged drug activities and other bad acts occurring up to seven years before the crimes charged in the indictment; and (3) whether Petitioner's sentence should be vacated and his case remanded for resentencing under Kimbrough v. United States, 128 S. Ct. 558 (2007). Seventh Circuit Case No. 06-3048, Amicus Brief at 1-2, 4 (d/e 47). Oral argument was held on January 7, 2009. Id., docket notation (d/e 60, 61). On October 14, 2009, the Seventh Circuit considered the three arguments raised by the amicus, affirmed Petitioner's conviction, but vacated his sentence and remanded for resentencing in light of Kimbrough, 552 U.S. 85. See United States v. Johnson, 584 F.3d 731 (7th Cir. 2009).

On remand, Judge Scott sentenced Petitioner to the same sentence originally given. Crim., Judgment (d/e 187). Petitioner appealed. On March 24, 2011, the Seventh Circuit again vacated Petitioner's sentence but this time remanded for a redetermination of the sentence in light of the parsimony principle of 18 U.S.C. § 3553(a). United States v. Johnson, 635 F.3d 983, 988, 990 (7th Cir. 2011) (noting that the defendant was not entitled to a redetermination of the drug quantities on the first remand and specifically noting that the second remand was limited to a redetermination of the sentence in light of the parsimony principle and that other aspects of the sentence were not to be revisited).

By this time, Judge Scott had retired from the bench, and the case was reassigned. On October 2, 2012, following a hearing, this Court entered judgment resentencing Petitioner to 360 months' imprisonment on Counts 1 and 10; 48 months on Counts 2, 3, and 4; 240 months on Count 8; and 60 months on Count 9, to all run currently. This Court sentenced Petitioner to 5 years of supervised release on Counts 1 and 10; 1 year on Counts 2, 3, and 4; and 3 years on Counts 8 and 9, all to run concurrently. This Court also imposed a $700 special assessment. Crim., Judgment (d/e 212).

Petitioner appealed. On February 19, 2013, the United States and appellate counsel for Petitioner filed a joint motion asking the Seventh Circuit to vacate the sentence and remand to give the district court the opportunity to consider and expressly address Petitioner's argument for a reduced crack-to-powder ratio. The Seventh Circuit granted that motion, vacated Petitioner's sentence, and remanded the case for resentencing. See Seventh Circuit Case No. 12-3254, Order (d/e 16).

In August 2013, this Court sentenced Petitioner to 293 months' imprisonment on Count 1; 48 months' imprisonment on Counts 2, 3, and 4; 240 months' imprisonment on Counts 8 and 10; and 60 months' imprisonment on Count 9, all to run concurrently. The Court also sentenced Petitioner to 5 years of supervised release on Counts 1 and 10; 1 year on Counts 2, 3, and 4; and 3 years on Counts 8 and 9, all to run concurrently; and a $700 special assessment. Crim., Judgment (d/e 234). Petitioner appealed.

On appeal, appellate counsel filed an Anders brief in support of his motion to withdraw as appointed counsel. On October 21, 2014, the Seventh Circuit granted counsel's motion to withdraw

and dismissed the appeal.  <u>Johnson</u>, 580 F. App'x at 480.

Petitioner did not file a petition for certiorari.

On January 19, 2016, Petitioner timely filed his § 2255 Motion by placing the Motion in the prison mailing system.[2] <u>See</u> Rule 3(d), Rules Governing Section 2255 Motions (providing a paper filed by an inmate confined to an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing); Mot. at 12 (d/e 1) (certifying that Petitioner placed the § 2255 Motion in the prison mailing system on January 19, 2016).

## II. ANALYSIS

In his § 2255 Motion, Petitioner raises 12 grounds for relief, all alleging ineffective assistance of counsel.

A person convicted of a federal crime may move to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  Relief

---

[2] The Motion is timely because Petitioner filed his § 2255 Motion within one year of the date on which the judgment of conviction became final.  <u>See</u> <u>Clay v. United States</u>, 537 U.S. 522, 532 (2003) (holding that "for federal criminal defendants who do not file a petition for certiorari with [the Supreme Court] on direct review, § 2255's one-year period of limitation starts to run when the time for seeking such review expires"); Sup. Ct. R. 13.1 (requiring a petition for certiorari be filed within 90 days after entry of judgment).  The time for seeking review of the Seventh Circuit decision expired on January 19, 2015.  Petitioner filed his Motion within one-year of that date, January 19, 2016.

under § 2555 is an extraordinary remedy because a § 2255 petitioner has already had "an opportunity for full process." Almonacid v. United States, 476 F.3d 518, 521 (7th Cir. 2007). Post-conviction relief under § 2255 is therefore "appropriate only for an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Harris v. United States, 366 F.3d 593, 594 (7th Cir. 2004) (internal quotation marks omitted).

To succeed on a claim of ineffective assistance, Petitioner must prove that: "(1) his attorney's performance fell below an objective standard of reasonableness; and (2) he suffered prejudice as a result." Wyatt v. United States, 574 F.3d 455, 457-58 (7th Cir. 2009) (citing Strickland v. Washington, 466 U.S. 668, 687-88 (1984)). The first prong is known as the "performance prong," and the second is known as the "prejudice prong." See, e.g., Wyatt, 574 F.3d at 458.

Under the performance prong, the Court's scrutiny of counsel's performance is highly deferential. Rodriguez v. United States, 286 F.3d 972, 983 (7th Cir. 2002). Petitioner must overcome the "strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance."
Strickland, 466 U.S. at 689 (also noting that the defendant must overcome the presumption that the challenged action might constitute sound trial strategy). Petitioner must establish the "specific acts or omissions of counsel that [Petitioner] believes constituted ineffective assistance." Wyatt, 574 F.3d at 458. The Court then determines if "such acts or omissions fall outside the wide range of professionally competent assistance." Id.

To satisfy the prejudice prong, Petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; see also Gentry v. Sevier, 597 F.3d 838, 851 (7th Cir. 2010). A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Failure to prove either prong is fatal to a claim of ineffective assistance. Chichakly v. United States, 926 F.2d 624, 630 (7th Cir. 1991); see also Strickland, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice … that course should be followed.").

The Court finds that an evidentiary hearing is not necessary because the allegations are conclusory or the factual matters raised may be resolved on the record before the Court. <u>See Rodriguez v. United States</u>, 286 F.3d 972, 986 (7th Cir. 2002), <u>as amended on denial of reh'g and reh'g en banc</u> (May 21, 2002).

## A.      Petitioner is Not Entitled to Relief on Ground One

Petitioner asserts that he was deprived his Sixth Amendment right to effective assistance of counsel when his first direct appeal attorney, Paris-Asaka, failed to argue meritorious issues after being instructed by Petitioner to do so, failed to be sufficiently informative in her arguments in her appellate brief, and abandoned Petitioner on appeal.

As noted above, appellate counsel filed a brief and presented an oral argument that the Seventh Circuit found to be "not sufficiently informative," resulting in the Seventh Circuit appointing an amicus to raise any issues on appeal deemed appropriate. The Seventh Circuit found one of the three grounds raised by the amicus meritorious, vacated Petitioner's sentence, and remanded for resentencing.

While Petitioner has demonstrated that appellate counsel's performance was objectively unreasonable, Petitioner has not shown prejudice. To show prejudice, Petitioner must show a reasonable probability that the issue his appellate counsel failed to raise or fully brief would have altered the outcome of the appeal had it been raised or fully briefed. See, e.g., Lee v. Davis, 328 F.3d 896, 901 (7th Cir. 2003). Petitioner does not identify the issues that appellate counsel should have raised on appeal or show that those issues would have been meritorious.

Instead, Petitioner argues that his appellate counsel's lack of representation was equal to him having no counsel on direct appeal at all. When a defendant has been deprived any assistance of counsel on appeal, prejudice is presumed. See Smith v. Robbins, 528 U.S. 259, 286 (2000) (noting that the "denial of counsel altogether on appeal . . . warrants a presumption of prejudice"); Castellanos v. United States, 26 F.3d 717, 718 (7th Cir. 1994) ("Abandonment is a per se violation of the sixth amendment.").

Petitioner was not completely denied the assistance of counsel on appeal. Appellate counsel filed a brief and attended

oral argument. While appellate counsel's performance was deficient, Petitioner was not completely denied counsel on appeal. See Penson v. Ohio, 488 U.S. 75, 88 (1988) (distinguishing between a denial of counsel that leaves a petitioner without representation during the appellate court's decisional process, in which case prejudice is presumed, and a claim that appellate counsel's performance was ineffective—such as by failing to raise a particular issue on appeal or failing to argue an issue as effectively as she should—which requires the petitioner show prejudice). Moreover, the Seventh Circuit appointed an amicus to raise and address any issues the amicus deemed appropriate. The Seventh Circuit considered those issues and partially ruled in Petitioner's favor. Because Petitioner was not completely deprived of the assistance of counsel on appeal, the Court will not presume prejudice. Petitioner has not shown prejudice, and he is not entitled to relief on Ground One.

## B.    Petitioner is Not Entitled to Relief on Ground Two

In Ground Two, Petitioner raises several ineffective-assistance-of-counsel claims related to the admission at trial of out-of-court statements of Petitioner's alleged co-conspirators.

Under Federal Rule of Evidence 801(d)(1)(E), co-conspirator statements are not hearsay and are admissible against a defendant at trial if the district court finds, by a preponderance of the evidence, that (1) a conspiracy existed, (2) the defendant and the declarant were involved in the conspiracy, and (3) the statements were made during and in furtherance of the conspiracy.  United States v. Davis, 845 F.3d 282, 286 (7th Cir. 2016); Fed. R. Evid. 801(d)(1)(E).  The district court must make a preliminary determination whether the statements are admissible.  United States v. Cardena, 842 F.3d 959, 993 (7th Cir. 2016).

In the Seventh Circuit, the preliminary determination can be made through the use of a Santiago proffer.  United States v. Santiago, 582 F.2d 1128, 1131 (7th Cir. 1978), overruled in part on other grounds by Bourjaily v. United States, 483 U.S. 171 (1987).  If the Government rests but has not met its burden of showing that the statements are admissible, the defendant can move for a mistrial or request that the court strike the statements.  United States v. Haynie, 179 F.3d 1048, 1050 (7th Cir. 1999).

On February 3, 2005, trial counsel filed a Motion for Government to Produce Santiago Proffer Prior to Trial.  Crim.,

Motion (d/e 49).  The Government filed a <u>Santiago</u> Proffer.  Crim.,

Proffer (d/e 62).  The <u>Santiago</u> Proffer identified the evidence the

Government believed would show a co-conspiratorial relationship

between Petitioner and "Kevin Turner, Craig Abbey, Joseph Abbey,

Nolan Nelson, Tomerker [<u>sic</u>] Robertson, Joseph Ball, Antonio

Woodson, Anthony Buckner, and others."  <u>Id.</u> at 2.  The

Government identified the anticipated evidence for each of the

three alleged conspiracies: the conspiracy to distribute cocaine, the

conspiracy to distribute crack, and the conspiracy to maintain a

drug-related premises.

On June 1, 2005, the Court denied defense counsel's request

for a hearing and conditionally admitted the out-of-court

statements of Petitioner's alleged co-conspirators made in

furtherance of one of the conspiracies alleged in the Second

Superseding Indictment.  Crim., Order (d/e 87).  The Court also

noted that Petitioner could make a motion at the end of the

Government's case or at the close of all of the evidence if Petitioner

believed the Government failed to submit the evidence set forth in

the proffer.  <u>Id.</u>

After the evidence portion of the trial was completed, the Court noted that the Court had provisionally admitted some co-conspirator statements based on the Government's <u>Santiago</u> proffer. Crim., Tr. at 1599 (d/e 159). The Court found "adequate proof of the existence of a conspiracy that make those statements proper." <u>Id.</u> at 1600. The Court fully admitted the statements as falling within the hearsay exception. <u>Id.</u>

After completion of the trial, Petitioner's counsel filed an addendum to his post-trial motions objecting, among other grounds, to the improper use of the statements of "unindicted individuals who were not allegedly conspirators." Crim., Addendum to Post-Trial Motions ¶ 15 (d/e 122) (also asserting that the Government's evidence far exceeded that of the <u>Santiago</u> proffer); Crim., Brief in Support (d/e 124). The Court found no error, noting that the "procedure used by the Court was proper and in accord with precedent." Crim., Opinion (d/e 137).

Petitioner now argues that his counsel provided ineffective assistance by failing to object to all of the alleged co-conspirator's testimony as being in violation of Federal Rule of Evidence 801(d)(2)(E) and <u>Santiago</u>, 582 F.2d 1126. Petitioner first asserts

that counsel should have asked the Court to clarify the ruling at trial because the Court's ruling only spoke about one of the three conspiracies. However, Petitioner has not shown that counsel's performance fell below an objective standard of reasonableness for failing to seek clarification of the Court's ruling. The Government's Santiago proffer clearly set out the three alleged conspiracies (d/e 62) and the Court specifically noted that the Court was conditionally admitting "the out–of-court statements of the Defendant's alleged co-conspirators made in furtherance of one of the conspiracies alleged in the Second Superseding Indictment" (d/e 87). Moreover, no reasonable probability exists that the outcome would have been different had counsel asked for a clarification of the Court's ruling at trial.

Petitioner also argues that counsel should have objected to the testimony of Nolan Nelson, Anthony Buckner, Kevin Turner, Prince Turner, Jr., Joseph Ball, Craig Abbey, and Tomeker Robertson on the basis that they were not co-conspirators. However, even assuming that those individuals were not co-conspirators, they were still competent to testify against Petitioner. Rule 801(d)(2)(E) does not require that the witness be a co-

conspirator of the defendant before he can testify to the out-of-court statements of another co-conspirator. Only the out-of-court declarant need be a co-conspirator of the defendant. <u>See</u> <u>United States v. Mojica</u>, 185 F.3d 780, 788 (7th Cir. 1999) (noting that, for purposes of Rule 801(d)(2)(E), it was enough that the declarant and the two defendants against whom the statement was admitted were members of the same conspiracy); <u>United States v. Westmoreland</u>, 312 F.3d 302, 309-310 (7th Cir. 2002) (finding that the wife's testimony that her husband told her he had helped the defendant bury a body was properly admitted under Rule 801(d)(2)(E) where the evidence showed that the husband and the defendant were members of the drug conspiracy and the statement, which was a threat to the wife, was made in furtherance of the conspiracy).

Petitioner next argues that counsel was ineffective for failing to object to (1) Nelson's testimony about the out-of-court statements of Justice Lee, Rodney McLee, and Jeff Fort, who were not mentioned in the <u>Santiago</u> proffer, or the out-of-court statements of Joseph Abbey, Brandon Clay, Damien Coleman, Antonio Woodson, Marvin Carr, and Derrick Phillips, who were mentioned in the proffer but whose roles were not specifically

identified; and (2) Prince Turner, Jr.'s references to the out-of-court statements of Rodney McLee, where Prince Turner was not identified in the <u>Santiago</u> proffer.

A petitioner must identify the specific acts of counsel that form the basis of his ineffective assistance of counsel claim. <u>Strickland</u>, 466 U.S. at 690. Here, Petitioner fails to identify the specific acts of counsel that form the basis of his claim.

Petitioner does not identify the statements that should not have been admitted and to which counsel should have objected. Petitioner simply makes the blanket assertion that certain witnesses testified to out-of-court statements of other specified individuals without identifying the challenged statements. That is insufficient. <u>See</u> <u>United States v. McCain</u>, No. 03 C 4362, 2003 WL 22706913, at *1 (N.D. Ill. Nov. 14, 2003) (a § 2255 petitioner must identify the conduct he is challenging and only addressing the four portions of the trial transcript to which the petitioner cited); <u>see also</u>, <u>e.g.</u>, <u>United States v. Bey</u>, 725 F.3d 643, 648 (7th Cir. 2013) (noting in a direct appeal that the defendant did not direct the court to the specific statements that he contended were improperly

admitted, which was "an omission that we might treat as waiver of the issue").

The Court has reviewed the transcript of the trial to try to locate the statements Petitioner challenges. Petitioner may be objecting, at least in part, to testimony of the witness's personal observations of other individuals. For example, Petitioner argues that Prince Turner Jr. improperly testified regarding certain out-of-court statements by Rodney McLee. Reply at 11 (d/e 9) (but not identifying the statements). At trial, Prince Turner Jr. testified about two drug transactions he observed between Kevin Turner and Petitioner. Prince Turner, Jr. testified that Kevin Turner came out of a room and got drugs from McLee. See Crim., Tr. at 917, 921 (d/e 157). Such testimony is not hearsay. Haynie, 179 F.3d at 1051 (finding that statements about events the witness personally observed were not hearsay).

In sum, Petitioner has not met his burden of showing that counsel's performance fell below an objective standard of reasonableness or that that outcome of the trial would likely have been different had counsel objected. Therefore, Petitioner's motion on this ground is denied.

**C.    Petitioner is Not Entitled to Relief on Ground Three**

Petitioner next argues that counsel was ineffective for failing to object to the Government's knowingly false statement of the law of conspiracy and continuing criminal enterprise and for not objecting to the Government's attempt to prove Petitioner guilty by association.

During his closing argument, counsel for Petitioner argued that the Government was improperly trying to show Petitioner was guilty by association.  Crim., Tr. at 1767-68 (d/e 160).  In rebuttal, the prosecutor stated:

> Guilt by association.  Mr. Noll asked, is that what they're trying to do?  Is that what they are doing, guilty by association? You know what the answer to that is?  Yes, yes, that's what we're doing.
>
> But let me tell you why we are doing it, which is the part he didn't tell you.  The reason we are doing it is because the charges are association type charges.  The conspiracy is an association between two or more people to form an agreement to do something illegal.  That's what a conspiracy is.  You have to associate yourself with one or more people to commit a conspiracy.  That's why the association is important.
>
> The continuing criminal enterprise, the same thing.  You have to show that he was associated and was the manager—great—of five or more people.  The second element of the offense.  Of course, the evidence is evidence of association.  How else to prove it?  How else

can we show you that there were five or more people if we said, well, there's no association, there's just people. We have to show you who these people are, what role they played with each other, so that we can show that Henry Johnson was the leader of the pack, the prince of this group.

We have to show it to you by what they did, how they associated themselves, what relationship existed between them. It cannot be shown to you in a vacuum. There has to be some thread tying them together. So yes, yes, it is guilt by association, because that's what the charge is. That's what the charges are. We have to prove an association between these people. . . .

Because the charges here are conspiracy and C.C.E., continuing criminal enterprise, and that—those charges by law the Government has to prove association.

Crim., Tr. at 1809-1811 (d/e 160).

Petitioner recognizes that the Court instructed the jury that an attorney's arguments are not evidence. Petitioner claims, however, that the Court created confusion by, after reading the jury instructions, advising the jury that counsel for the Government would give the argument for the Government "in accordance with the instructions already given you." Crim., Tr. 1732-33. According to Petitioner, this led the jury to believe that the Government's misstatements of the law were correct. If

counsel had objected, the Court could have corrected the misimpression.

The prosecutor did not misstate the law and, taken in context, the prosecutor's rebuttal did not ask the jury to find Petitioner guilty by association. In response to defense counsel's arguments that the prosecution was "saying since these people are associated through this gang membership, you should find [Petitioner] guilty by association." (Tr. at 1767 (d/e 160)), the prosecutor explained why the evidence of the association between the individuals was necessary to prove the continuing criminal enterprise and conspiracy charges. Petitioner has not shown that counsel's failure to object fell below an objective standard of reasonableness.

Moreover, Petitioner cannot demonstrate prejudice. The Court properly instructed the jury on the elements of the continuing criminal enterprise and conspiracy offenses. Crim., Given Jury Instructions (d/e 110) at 1 (instruction on Count 1); Id. at 3-6 (instructions on conspiracy and Counts 5 through 7); Tr. (d/e 160) at 1718 (instruction on Count 1); Id. at 1720-23 (conspiracy instructions). The Court also instructed the jury that

counsel's arguments were not evidence and that the Court would give the jury the law that applies to the case.  <u>See</u> Crim., Tr. at 1697 ("In just a moment I'm going to read to you the instructions of law that apply to this case."); <u>Id.</u> at 1699 (the arguments of the attorneys are not evidence); <u>Id.</u> at 1700 (advising the jury that it is the jury's duty to "apply the law that I give you to the facts"); Given Jury Instructions (d/e 110) at 5 ("Your second duty is to apply the law that I give you to the facts."); <u>Id.</u> at 21 ("lawyers' statements to you are not evidence").  The Court assumes the jury follows the Court's instructions, absent substantial evidence to the contrary. <u>United States v. Williams</u>, 216 F.3d 611, 615 (7th Cir. 2000).  No contrary evidence has been presented.

The Court finds that the statement to the jury that the prosecution would present closing arguments "in accordance with the instructions already given you" did not suggest to the jury that the prosecutor's statements were to be construed as evidence or could overrule the Court's statement of the law.  In addition, substantial evidence supports the jury's verdict and demonstrates the jury did not find him guilty by association.  The Government presented evidence that Petitioner rose through the ranks of the

Black P-Stone Nation gang. Witnesses testified about Petitioner's gang and drug activities during the relevant time periods. According to the witnesses, Petitioner obtained distribution quantities of powder cocaine from Kevin Turner, a Chicago Black P-Stone Nation member holding the rank of Prince. Petitioner and others then cooked the powder cocaine into crack, which was sold. Witnesses testified that Petitioner established and enforced rules governing the Black P-Stone Nation members' sale of crack in Quincy, Illinois. The lower-ranking members of the Black P-Stone Nation sold the crack, either taking turns selling the available drugs or putting the available drugs in a pot and splitting the proceeds. Witnesses also testified about Petitioner's distribution of marijuana. Consequently, Petitioner cannot show that he was prejudiced by his counsel's failure to object to the prosecutor's comments about guilt by association, and he is not entitled to relief on Count Three.

## D.  Petitioner is Not Entitled to Relief on Ground Four

Petitioner next argues that his trial counsel rendered ineffective assistance of counsel by not objecting to the Government's solicitation of false testimony from the Government

witness, forensic scientist Michael Cravens. Petitioner argues that counsel should have objected to Cravens' knowingly false testimony about the initial testing and alleged retesting of Exhibit 16. Exhibit 16 contained the substance that Joseph Ball sold to Carl Douglas on June 25, 2001 and that field tested positive for cocaine. Crim., Tr. at 1307 (d/e 158) (Special Agent Patrick Frazier testimony).

Defense counsel did not object to the Court recognizing Cravens as an expert in the field of chemistry and the identification of controlled substances. Crim., Tr. at 1389 (d/e 158). Cravens testified that cocaine and crack cocaine are different salt forms. Id. at 1388. He stated that the "cocaine that's extracted from the cacao leaf in the extraction process is usually made into cocaine hydrochloride or the hydrochloride salt of cocaine." Id. He further testified that crack is cocaine hydrochloride that is "hit with a basic substance" like baking soda and the "hydrochloride ion is stripped from the cocaine hydrochloride molecule and you have cocaine base." Id.

Cravens received Exhibit 16 on July 10, 2001, and it was put in the evidence locker. Tr. at 1394. Cravens removed the exhibit

from the evidence locker on July 11, 2001.  Id.  Cravens weighed the material and performed a number of preliminary screening tests.  Id.  He then performed the gas chromatograph mass spectrometer testing, which involved dissolving a scraping of the material in a solvent, injecting the material onto the instrument, and receiving "mass spectrum or disintegration pattern of the chemical."  Id. at 1395.  He compared the result with a known standard and determined the substance contained cocaine.  Id.; see also Crim., Report dated July 18, 2011 (listing the "Findings" as "Cocaine") (Ex. 16-A).

Cravens testified that he was subsequently asked to re-examine the substance to determine "what salt form the material actually was."  Tr. at 1395.  He did this by re-weighing the material, performing the preliminary tests, and then performing an infra-red spectrometry on some of the scrapings of the substance. Id. at 1395-96.  That instrument gave him the information that the substance was cocaine base, which is known on the street as crack.  Id. at 1396; see also Supplemental Report dated January 21, 2005 (listing the "Findings" as "Cocaine base") (Ex. 16-A).

Cravens testified that there was a change in the laboratory protocol from when he first tested the substance (in 2001) and the second time he tested the substance (in 2005). Tr. at 1396-97. Cravens agreed it was now routine for him to "take such exhibits and actually go and determine whether it's in the form of either the salt or the base." Tr. at 1397.

Petitioner argues that Cravens' testimony concerning laboratory protocol was false because forensic lab reports from 1994, 1998, 1999, and 2001 report finding "cocaine (present as a base)." See Motion, Ex. 4 (d/e 1-5, 17-23) (laboratory reports). According to Petitioner, this shows that Cravens was lying when he essentially testified that it was not routine to determine whether the cocaine was in the form of the salt or the base when he first tested the substance. Petitioner also argues that some laboratory negligence or evidence tampering must have taken place to cause Craven to falsely cover up why his initial report found cocaine— which Petitioner interprets as a finding of powder cocaine—while his second report found cocaine base (crack).

Petitioner has not met his burden of showing that counsel's performance fell below an objective standard of reasonableness.

Petitioner does not indicate how his counsel knew or should have known that the testimony about the laboratory protocol was false. See, e.g., United States v. Sheneman, No. 3:10-CR-126 JD, 3:12-CV-720 JD, 2014 WL 2453011, at *22 (N.D. Ind. June 2, 2014) (refusing to consider further the petitioner's claim that counsel failed to object to false testimony where the petitioner did not indicate how his counsel knew or should have known that the testimony was false or what counsel should have done to address it). Moreover, the reports Petitioner submitted do not indicate whether the testing to determine whether the substance was powder cocaine or crack cocaine was performed as part of the laboratory protocol or upon a specific request that such a determination be made. Without such evidence, Petitioner has not shown that Cravens' testimony was likely false and that counsel should have objected. Moreover, even if Cravens' testimony about the policy was false, Petitioner has not presented any evidence demonstrating that the second testing was incorrect or that the substance was not, in fact, cocaine base (crack).

Petitioner raises an additional claim of ineffective assistance in his reply brief—that Cravens' testimony about the salt form and

the base form was false.  Petitioner argues that Cravens' testimony on cross-examination contradicted what he said on direct exam and that counsel did not "expose him."  Reply at 30 (d/e 9). According to Petitioner, counsel knew Cravens was giving false testimony "by trial counsel['s] own questioning on cross-examination of Mr. Cravens."  Id.

Petitioner raised this particular argument for the first time in his reply brief.  Therefore, the issue is forfeited.  Gonzales v. Mize, 565 F.3d 373, 382 (7th Cir. 2009) (argument raised for the first time in the § 2254 petitioner's reply brief was waived); United States v. Cooper, 243 F.3d 411, 415-16 (7th Cir. 2001) (distinguishing waiver and forfeiture).

Even if the issue were not forfeited, however, Petitioner has not shown deficient performance or prejudice.  Petitioner takes issue with Cravens' reference to cocaine and cocaine base being "different salt forms" because cocaine in its natural state is a base, cocaine powder is a salt, and crack cocaine is a base.  Petitioner argues that counsel had several opportunities to "expose" Cravens but did not do so.

Counsel cross-examined Cravens about the cocaine in its natural form, the salt form, and the base form.  See Crim., Tr. at 1400 (d/e 158) (Cravens agreeing that cacao material taken out of the plant is in a base form); Tr. at 1401 (Cravens agreeing and testifying that cocaine coming out of the plant can be made into cocaine hydrochloride, the salt base); Tr. at 1406 (Cravens agreeing that he can either test for hydrochloride cocaine or base cocaine); Tr. at 1409 (Cravens testifying that Exhibit 16 is not a salt in itself).  The jury heard Cravens' testimony, and the Court instructed the jury to give the testimony whatever weight the jury thought the opinion deserved.  Crim., Given Jury Instructions at 29 (d/e 110).  Petitioner has not shown that counsel's performance was deficient or that Petitioner was prejudiced.  Therefore, Petitioner is not entitled to relief on Ground Four.

## E.    Petitioner is Not Entitled to Relief on Ground Five

Petitioner argues that trial counsel rendered ineffective assistance of counsel by not tendering any jury instructions.  He also asserts that counsel should have tendered certain jury instructions, including a buyer-seller instruction, an instruction that a defendant is not a member of a conspiracy just because he

associated with people involved in a conspiracy, and that membership in a gang is not a violation of law. Petitioner argues he suffered prejudice because the outcome of the trial would have been different had counsel submitted these instructions.

Counsel is not ineffective solely for failing to submit jury instructions. United States v. Brown, 739 F.2d 1136, 1147 (7th Cir. 1984) ("The failure to submit instructions does not in itself make out a claim for ineffective assistance."). In this case, although counsel did not submit his own set of jury instructions, counsel vigorously engaged in the jury instruction conference by objecting to instructions and proposing changes to the language.

As for the specific instructions Petitioner claims counsel should have submitted, Petitioner has not shown he was prejudiced by the failure to request an instruction that a defendant is not a member of a conspiracy just because he associated with people involved in a conspiracy and that membership in a gang is not a violation of law. Counsel argued several times during closing arguments that it was insufficient to find Petitioner guilty solely because he associated with people involved in the conspiracy or because he was a member of a gang. See Crim., Tr. at 1768

(arguing that the Government was trying to prove Petitioner guilty because he associated with confessed drug-dealers and because of "gang affiliation," noting that "[g]uilt by association is not acceptable to fair minded individuals"); Tr. at 1789 (stating that the Government was trying to say that since Petitioner was associated with others, he must have conspired with them but arguing that the Government has no corroboration).  In addition, the Court properly instructed the jury, including on the conspiracy counts, which accurately indicated that more than association or gang affiliation was required.  See, e.g., Crim., Given Jury Instructions at 3 (d/e 110) (defining conspiracy as an agreement between two or more people to accomplish an unlawful purpose, that the jury must base its decision of whether the defendant joined the charged conspiracy based on what the defendant did or said, and that the Government must prove beyond a reasonable doubt that the defendant was aware of the common unlawful purpose and was a willing participant); Navar v. United States, No. 10 C 4874, 2011 WL 3584779, at *4 (N.D. Ill. Aug. 10, 2011) (finding that, even if counsel should have requested a "mere presence" instruction, any deficiencies were cured because defense

counsel stated during closing arguments that, "There is no guilt by association in this country" and other instructions "conveyed the issues fairly and accurately, indicating that presence alone is insufficient").  Moreover, the evidence of Petitioner's involvement in the conspiracy was overwhelming and, as stated with regard to Ground Three, there is no reasonable probability that the jury found Petitioner guilty by association.  See Leach v. Kolb, 911 F.2d 1249, 1261 (7th Cir. 1990) (finding no prejudice where, even if counsel had tendered the instruction, the jury would have nonetheless convicted the defendant because the evidence was overwhelming).

The failure to submit a buyer-seller instruction is a closer question.  Count 5 of the Second Superseding Indictment alleged that Defendant conspired with Kevin Turner, and other persons known and unknown, to distribute cocaine.   The evidence at trial demonstrated that Petitioner purchased large quantities of cocaine from Turner over a period of time and paid for the drugs at the time of the purchase.

A buyer-seller instruction is warranted if the jury could rationally find that the defendant merely bought or sold drugs but

did not engage in a conspiracy.  <u>United States v. Cruse</u>, 805 F. 3d 795, 814 (7th Cir. 2015); <u>see also</u> Seventh Circuit Pattern Jury Instruction § 6.12, Committee Comment (1999 ed.) (providing that the buyer-seller instruction should be given where requested if there is evidence to support it); Seventh Circuit Pattern Jury Instruction § 5.10(A), Committee Comment (2012 ed.) (providing the buyer-seller instruction should be given if a jury could reasonably find that there was only a buyer-seller relationship rather than a conspiracy).  The Government did not present evidence at trial that Petitioner bought drugs from Turner on credit, received commission payments, or sold the cocaine at Turner's direction.  <u>See</u> <u>United States v. Lomax</u>, 816 F.3d 468, 477 (7th Cir. 2016) (identifying the characteristics that distinguish a conspiracy from a buyer-seller relationship); <u>but see</u> <u>Hamilton v. United States</u>, No. 10-cv-4028, 2010 WL 5125893, at *3 (C.D. Ill. Dec. 9, 2010) (denying ineffective assistance of counsel claim finding that the evidence showed the petitioner, who was charged with conspiracy to distribute crack and possession with intent to distribute crack, was actively engaged in the production of the crack cocaine for resale; therefore, counsel's decision not to

request the buyer-seller instruction did not fall outside the reasonable range of trial counsel's discretion).

Nonetheless, Petitioner cannot show prejudice. Although the jury found Petitioner guilty on Count 5, that Count merged into the judgment of conviction on Count 1. Therefore, Petitioner was not sentenced on Count 5 and was not prejudiced. See 28 U.S.C. § 2255(a) (providing means of relief where the petitioner claims his sentence was imposed in violation of the Constitution or laws of the United State, the court was without jurisdiction to impose such sentence, or the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack); see also, e.g., Razo v. Thomas, 700 F. Supp. 2d 1252, 1272 (D. Hawai'i 2010) (noting in case brought under 28 U.S.C. § 2254, that because Count 1 was merged with Count 4 and the petitioner was sentenced only on Count 4 and not Count 1, there was not Count 1 to challenge under § 2254 and no prejudice attributable to the alleged erroneous instruction).

Moreover, even assuming that a buyer-seller instruction would have caused the jury to find Petitioner not guilty on Count 5, there is no reasonable probability that an acquittal on Count 5

would have affected Petitioner's convictions on the other Counts. For example, to prove Count 1, continuing criminal enterprise, the Government had to prove (1) a violation of the federal narcotics law (2) which crime was part of a series of violations of the federal narcotics laws, (3) undertaken by Petitioner and at least five other individuals, (4) with respect to whom Petitioner held a supervisory, managerial, or organizational role, and (5) from which Petitioner received substantial income or resources.  United States v. Gibbs, 61 F. 3d 536, 537 (7th Cir. 1996).  The "series of violations of the federal narcotics law" requires at least two or more predicate offenses.  United States v. Wilson, 237 F.3d 827, 833 (7th Cir. 2001) (noting that the Seventh Circuit "has held that a CCE charge may be established by two or more predicate offenses, even when the jury instructions require three") (emphasis in original); but see Richardson v. United States, 526 U.S. 813, 817 (1999) (assuming, but not deciding, that "the necessary number is three").

In this case, the underlying narcotics offenses alleged in Count 1 of the Second Superseding Indictment were those alleged in Counts 2, 3, 4, 8, 9, and 10 of the Second Superseding Indictment.  Of the predicate offenses alleged, only Counts 2, 3,

and 4 referenced the conspiracy to distribute cocaine and, as discussed below with regard to Ground Eight, those counts must be vacated on other grounds. And, even without Counts 2,3, and 4, Petitioner's conviction on Count 1 stands because the jury found that Petitioner committed three other predicate offenses – those alleged in Counts 8, 9, and 10. Therefore, because Petitioner cannot show he was prejudiced by counsel's failure to propose a buyer-seller instruction with regard to Count 5, Petitioner is not entitled to relief on Ground Five.

**F.      Petitioner is Not Entitled to Relief on Ground Six**

Petitioner argues that trial counsel rendered ineffective assistance of counsel at sentencing by not objecting to the inconsistencies and contradictions in the testimony of Government witnesses Tomeker Robertson and Joseph Ball that the Probation Officer used in the Third Revised Presentence Report (PSR). The Probation Officer used the testimony of Robertson and Ball in certain paragraphs of the PSR when calculating relevant conduct.

Specifically, Petitioner objects to paragraphs 32 through 34 of

the Third Revised PSR (d/e 217), which correspond to paragraphs

28 through 30 of the Revised PSR (d/e 146): [3]

> 28.  In June 2000, Tomeker Robertson [made] five or six trips for [Petitioner] to Chicago to transport crack cocaine back to Quincy. [Petitioner] paid him for the trips. Each time, between 2 ¼ ounces and 4 ½ ounces of crack cocaine were brought by Robertson to [Petitioner] and delivered to [Petitioner] at one of [Petitioner's] apartments in Quincy. Based on this information, [Petitioner] is conservatively being held accountable for 11.25 ounces (318.93 grams) of crack cocaine. **(Count 1)**

> 29. From approximately July 2000 to early 2001, Robertson traveled to Chicago two to three times a week to obtain 2 ¼ ounces of crack for [Petitioner].  Based on this information and using conservative estimates, Robertson would have obtained crack cocaine approximately 48 times during a six-month period, resulting in approximately 108 ounces (3,061.8 grams) of crack cocaine. **(Count 1)**

> 30. Beginning in October 2000, Joseph Ball started making trips with [Petitioner] to obtain cocaine from [Petitioner's] supplier, Kevin Turner, in Chicago. Between October 2000 and July 2001, Ball traveled to Chicago two or three times weekly and purchased nine ounces of cocaine for [Petitioner], which was then converted into crack cocaine. Based on this information and using conservative estimates, Ball obtained 9 ounces of cocaine base twice per month for 10 months, for a total of 180 ounces of cocaine base for [Petitioner]. On one occasion Ball accompanied [Petitioner] when he

---

[3] Because the remands were limited remands, the Court reviews Petitioner's objections in Ground Six by referring to the Revised PSR (d/e 146) and the objections at the original sentencing hearing.

purchased 27 ounces of cocaine from Kevin Turner at Justice Lee's residence in Chicago. On another occasion, in June 2001, Ball went to Chicago with [Petitioner] and he purchased 13 ½ ounces of cocaine. All of the cocaine was taken to Quincy, where it was converted to crack at Tomeker Robertson's residence and stored. Based on this information, [Petitioner] is accountable for 220 ½ ounces (6,251.17 grams) of cocaine base. **(Count 1)**

Crim., Revised PSR (d/e 146); Crim., Third Revised PSR at 9 (d/e 217) (containing the same language at paragraphs 32, 33, and 34).

Prior to the original sentencing hearing, trial counsel filed a Commentary on Sentencing Factors that contained objections to the PSR raised by counsel and objections raised by Petitioner pro se. Crim., Tr. at 4-5 (d/e 161); Crim., Def. Commentary on Sentencing Factors (d/e 140). Petitioner raised pro se objections to paragraphs 28 and 29. See Def. Commentary at 6. Petitioner also raised additional objections at the sentencing hearing, including an objection to paragraph 30 on the ground that "No cocaine was purchased or bought for me [sic] was not part of any cocaine or crack conspiracy." Crim., Sentencing Hearing, Def. Ex. 1. Petitioner also testified at the sentencing hearing. Crim., Tr. 30-50 (d/e 161).

At the original sentencing hearing, the Court specifically addressed the objections to the paragraphs dealing with drug quantity and overruled those objections. The Court found that the quantity for which Petitioner was being held accountable was accurate as set forth in the testimony from trial. Crim., Tr. at 56 (d/e 161). The Court also entered a written order overruling Petitioner's objections to several paragraphs, including Paragraphs 28 through 30, finding the evidence supported the findings in each of the relevant paragraphs. Crim., Opinion (d/e 142).

This Court has also reviewed the trial testimony of Robertson and Ball and finds that their trial testimony supports the findings in Paragraphs 28, 29, and 30. The Court notes, however, that Paragraph 30 contains a typographical error. Paragraph 30 states that "[b]etween October 2000 and July 2001, Ball traveled to Chicago two or three times weekly and purchased nine ounces of cocaine for [Petitioner,] which was then converted into crack cocaine." At trial, Ball testified that he traveled two to three times per <u>month</u> and that the total number of trips he made for Petitioner was more than 12. Crim., Tr. 1208, 1271 (d/e 158). Paragraph 30, however, used a calculation of two trips per <u>month</u>

when calculating the cocaine base for which Petitioner was held accountable.  <u>See</u> Paragraphs 30 ("Based on this information and using conservative estimates, Ball obtained 9 ounces of cocaine base twice per month for 10 months").  Therefore, the amount actually attributed to Petitioner was consistent with Ball's testimony.

Because trial counsel presented Petitioner's pro se objections to the Court and because the paragraphs are supported by the trial testimony, Petitioner has not demonstrated either deficient performance or prejudice.  Petitioner is not entitled to relief on Ground Six.

**G.     Petitioner is Not Entitled to Relief on Ground Seven**

In Ground Seven, Petitioner argues that trial counsel rendered ineffective assistance for not objecting to the constructive amendment of Count 1 of the Second Superseding Indictment. Petitioner asserts that the Government constructively amended Count 1 by way of argument and the evidence presented throughout the trial in violation of Petitioner's Fifth and Sixth Amendment rights.

Pursuant to the Fifth Amendment of the United States Constitution, "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment of indictment of a Grand Jury."  U.S. Const. amend. V.  A constructive amendment of the indictment violates the Fifth Amendment because a defendant can only be convicted of the offenses contained in the indictment.  United States v. Willoughby, 27 F.3d 263, 266 (7th Cir. 1994).  A constructive amendment "occurs when either the government (usually during its presentation of evidence and/or its argument), the court (usually through it instructions to the jury), or both, broadens the possible bases for conviction beyond those presented to the grand jury."  United State v. Cusimano, 148 F.3d 824, 829 (7th Cir. 1998) (internal quotation marks omitted); see also United States v. Pigee, 197 F.3d 879, 887 (7th Cir. 1999) (noting that when the proof at trial or the jury instructions establish offenses different from or in addition to the offenses charged in the indictment, the indictment is constructively amended in violation of the Fifth Amendment).  A constructive amendment is reversible per se if the defendant raised the proper

objection before the trial court. <u>United States v. Remsza</u>, 77 F. 3d 1039, 1043 (7th Cir. 1996).

Count 1 of the Second Superseding Indictment alleged that, during 2000 and continuing until late 2002, Petitioner knowingly and intentionally engaged in a continuing criminal enterprise by repeatedly distributing and possessing with intent to distribute controlled substances, including cocaine, crack, and marijuana in concert with at least five other persons. Count 1 further alleged that Petitioner occupied positions of organizer, supervisor, and other positions of management. Petitioner allegedly obtained substantial income and resources from the continuing series of violations. As part of the continuing criminal enterprise, Petitioner committed and caused to be committed numerous acts, including but not limited to the acts set forth in Counts 2, 3, 4, 8, 9, and 10 of the Second Superseding Indictment. The Court instructed the jury as follows on Count 1:

> To sustain the charge in Count 1 that the defendant engaged in a continuing criminal enterprise, the government must prove each of the following propositions beyond a reasonable doubt:

First, that the defendant committed a continuing series of at least two or more of the narcotics offenses alleged in Counts 2, 3, 4, 8, 9, 10;

Second, the defendant committed the offenses acting in concert with five or more other persons;

Third, the defendant acted as an organizer, supervisor or manager of those five or more other persons; and

Fourth, the defendant obtained substantial income or resources from the offenses.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty on Count 1.

If, on the other hand, you find from your consideration of all of the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty on Count 1.

Crim., Given Jury Instructions at 1 (d/e 110); Tr. at 1718-19 (d/e 160).

Petitioner essentially argues that the Government constructively amended Count 1 by presenting the gang affiliation evidence. Petitioner argues that the Government substituted and used interchangeably the Black P-Stone Nation as the enterprise, organization, or conspiracy but Count 1 did not mention anything

about the Black P-Stones being charged as the enterprise. Petitioner asserts that trial counsel was ineffective for failing to object to the Government's constructive amendment of Count 1.

No constructive amendment occurred here. The Government's evidence did not go beyond the parameters of the indictment and establish an offense different from or in addition to that charged by the grand jury in Count 1.

The Government was required to prove that Petitioner committed a continuing series of narcotics offenses; acted in concert with five or more other persons; acted as an organizer, supervisor, or manager of those five or more other persons; and obtained substantial income or resources from the offenses. See, e.g., Gibbs, 61 F. 3d at 537. The persons involved in the offenses were drug dealers, some of whom were convicted felons and some of whom were members of the same gang as Petitioner. Evidence of gang affiliation is relevant and admissible "to demonstrate the existence of a joint venture or conspiracy and a relationship among its members." United States v. Westbrook, 125 F.3d 996, 1007 (7th Cir. 1997); see also United States v. Suggs, 374 F.3d 508, 516 (7th Cir. 2004) (trial court properly

admitted evidence of the defendants' gang affiliation for the limited purpose of demonstrating the existence of a conspiracy and the connections between the members of the gang and the conspiracy). Here, over the objections of Petitioner's trial counsel both pre-trial and post-trial, the Court admitted the gang affiliation evidence for such purposes. <u>See</u> Crim., Opinion at 7 (d/e 137) ("The evidence of gang affiliation was relevant and admissible and intricately tied to the Defendant's criminal activity."); Crim., Order at 3 (d/e 39) (pre-trial finding that the gang affiliation evidence could be admissible assuming the Government laid a proper foundation).

Because the gang affiliation evidence was properly admitted and did not establish an offense different from or in addition to that charged by the grand jury, Petitioner cannot show prejudice from Petitioner's failure to object to the alleged constructive amendment.

Petitioner also argues that the Government admitted that the gang evidence was interchangeable with the conspiracy and enterprise. Petitioner cites to the portion of the trial transcript where defense counsel objected to the Government's Jury Instruction No. 32. Jury Instruction No. 32 provided that the

Government had to prove that the defendant was aware of the "common purpose" of the conspiracy. Crim., Tr. 1615-16 (d/e 159); Refused Jury Instruction at 62 (d/e 111). Defense counsel noted a distinction between Petitioner joining a street gang versus joining a drug conspiracy. Tr. at 1616. The prosecutor responded, "Well, the evidence is—does not separate it out. It is one and the same, absolutely one and the same." Tr. at 1617. The Court appeared to reject this statement, noting defense counsel's argument that it is not a crime to join a gang, Id., and changed the instruction to read that the Government had to prove that the defendant was aware of the "common <u>unlawful</u> purpose" of the conspiracy. Crim., Tr. at 1621 (d/e 159) (emphasis added); Given Jury Instructions at 3 (d/e 110) (emphasis added). The jury was properly instructed, and no constructive amendment occurred. As such, Petitioner is not entitled to relief on Ground Seven.

## H.    Petitioner is Entitled to Relief on Ground Eight

In Ground Eight, Petitioner argues that trial counsel rendered ineffective assistance of counsel for not objecting to the constructive amendment of Counts 2, 3, and 4 of the Second Superseding Indictment. Petitioner argues that the jury

instructions constructively amended Counts 2, 3, and 4 by (1) adding another offense, namely possession with intent to distribute (2) by changing the specific drugs alleged in the indictment— cocaine and crack—to "controlled substances"; and (3) by merging the conspiracy to distribute cocaine and the conspiracy to distribute crack.

Counts 2, 3, and 4 of the Second Superseding Indictment charged Petitioner with use of a telephone to facilitate a drug offense. Each Count alleged that Petitioner knowingly used a cellular telephone in committing the offenses of distribution of cocaine, conspiracy to distribute cocaine, and conspiracy to distribute crack, in that he had a conversation wherein he discussed the arrangements for the purchase of cocaine. Crim., Second Superseding Indictment at 2-3 (d/e 41). However, the Court instructed the jurors as follows on Counts 2, 3, and 4 by adding the language, "possession with intent to distribute":

> To sustain the charges in Counts 2, 3 and 4 that the defendant used or caused to be used, a telephone to facilitate a violation of the narcotics laws, the Government must prove each of the following propositions beyond a reasonable doubt:
>
> First, the defendant used a telephone;

Second, that use of the telephone was for the purpose of committing or causing or facilitating the commission of the distribution or <u>possession with intent to distribute</u> controlled substances, or conspiring to distribute controlled substances;

Third, that such use of a telephone was knowing or intentional.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt for a specific count, then you should find the defendant guilty of the charge in that count.

If, on the other hand you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt for a specific count, then you should find the defendant not guilty of the charge in that count.

Crim., Given Jury Instructions at 2 (d/e 110) (emphasis added);

<u>see</u> <u>also</u> Tr. at 1719-20 (d/e 160).

The Government concedes that the Court expanded the charges alleged by the grand jury in Counts 2, 3, and 4 of the Second Superseding Indictment by including "possession with the intent to distribute" in the jury instructions because the offense of possession with intent to distribute was not contained in the Second Superseding Indictment.  The Government agrees that defense counsel should have objected to the jury instruction on the

basis that the charges contained in the jury instruction were in effect a constructive amendment of the charges contained in the Second Superseding Indictment, and his failure to do so deprived Petitioner of the effective assistance of counsel. The Government requests that the convictions in Counts 2, 3, and 4 be vacated leaving the convictions and sentences on the remaining counts intact.

In his reply brief, Petitioner disagrees that vacating Counts 2, 3, and 4 leaves the remaining convictions intact and disagrees with the Government's assertion that a new sentencing hearing is not required. Petitioner also asserts that Count 1 must be dismissed because Counts 2, 3, and 4 served as three of the six predicate acts in Count 1 and because Count 1 of the Superseding Indictment included the language "possession with intent to distribute." Petitioner further asserts that the Government failed to respond to Petitioner's other grounds for vacating Counts 2, 3, and 4.

The Court accepts the Government's concession. Counts 2, 3, and 4 of the Second Superseding Indictment charged Petitioner with using a telephone to facilitate the distribution of cocaine,

conspiracy to distribute cocaine, and conspiracy to distribute crack, not to facilitate the possession of a controlled substance with the intent to distribute. The Court nonetheless instructed the jury that it could find Petitioner guilty of Counts 2, 3, and 4 if the evidenced proved that Petitioner possessed controlled substances with the intent to distribute. The Government presented evidence regarding Petitioner's possession of controlled substances with the intent to distribute. Therefore, this jury instruction expanded the charges returned by the grand jury in violation of Petitioner's Fifth Amendment right. See Pigee, 197 F.3d at 887 (finding that Count 7 was constructively amended and remanding for resentencing as the district court saw fit where the indictment charged the defendant with making the building available for the purpose of storing drugs but the jury instructions permitted conviction based on evidence that the defendant made the building available for the purpose of manufacturing, distributing, storing, and using drugs and the government introduced evidence of distribution at the building but had also presented evidence that the building was used to store drugs). Defense counsel should have objected to the instruction, and his failure to do so prejudiced Petitioner. Having

so found, the Court need not address Petitioner's additional arguments for vacating Counts 2, 3, and 4.

The Court agrees with Petitioner that resentencing is necessary. When part of a sentence is vacated, the district court is entitled to resentence the defendant on all counts. <u>United States v. Smith</u>, 103 F.3d 531, 533 (7th Cir. 1996) (involving § 2255 Motion); <u>see</u> <u>also</u> <u>United States v. Pennington</u>, 667 F.3d 953, 958 n.3 (7th Cir. 2012) ("A district judge's sentencing decision ordinarily concerns the entire 'sentencing package.'"). The lack of a conviction on three of the Counts (and three of the six alleged predicate offenses alleged in Count 1) may very well affect this Court's determination of the appropriate "sentencing package."

The Court disagrees, however, that vacating Counts 2, 3, and 4 requires that Count 1 also be vacated. In the Seventh Circuit, to prove a continuing criminal enterprise, the Government was required to prove, beyond a reasonable doubt that Petitioner committed a continuing series of at least two or more of the narcotics offenses alleged in Counts 2, 3, 4, 8, 9, and 10. <u>See</u> <u>United States v. Wilson</u>, 237 F.3d 827, 833 (7th Cir. 2001) (noting that the Seventh Circuit "has held that a CCE charge may be

established by <u>two</u> or more predicate offenses, even when the jury instructions require three") (emphasis in original); <u>but</u> <u>see</u> <u>Richardson v. United States</u>, 526 U.S. 813, 817 (1999) (assuming, but not deciding, that "the necessary number is three"). Here, the Government actually proved a continuing series of three narcotic offenses.

The verdict form for Count 1 required the jury to mark with an "X" those narcotic offenses the Government proved, beyond a reasonable doubt, Petitioner committed as part of the continuing criminal enterprise charged in Count 1. Crim., Verdict at 2 (d/e 109). The jury marked all of the offenses listed—Counts 2, 3, 4, 8, 9, and 10. Therefore, even after Counts 2, 3, and 4 are vacated, the jury found Petitioner committed a continuing series of two or more narcotics offenses, namely Counts 8, 9, and 10. Therefore the vacation of Counts 2, 3, and 4 does not affect the validity of the conviction on Count 1.

## I. Petitioner is Not Entitled to Relief on Ground Nine

Petitioner next argues that his trial counsel rendered ineffective assistance of counsel for not objecting to the erroneous

jury instruction for Count 8 and the constructive amendment of Count 8 of the Second Superseding Indictment.

Count 8 charged Petitioner with maintaining drug-involved premises.  Specifically, Count 8 charged that Petitioner

> while managing and controlling a building owned by defendant's mother, namely a residence at 908 Chestnut, Quincy, Illinois, as an agent knowing and intentionally leased and made available for use said building for the purpose of unlawfully storing and distributing controlled substances, namely, marijuana, a Schedule I controlled substance, and "crack" cocaine, a Schedule II controlled substance.

Crim., Second Superseding Indictment (d/e 41).  The Court instructed the jury as follows on Count 8:

> To sustain the charge of maintaining a drug-involved premises, as charged in Count 8 of the Second Superseding Indictment, the Government must prove:
>
> First, that the Defendant controlled or maintained as an agent a premises located at 908 Chestnut, Quincy, Illinois; and
>
> Second, that the Defendant knowingly and intentionally leased and made available said premises for the purpose of storing and distributing controlled substances, including cocaine base ("crack") and marijuana.

Crim., Given Jury Instructions at 7 (d/e 110); see also Tr. 1723-24 (d/e 160).

Petitioner argues that trial counsel should have objected to the jury instruction for Count 8 on the ground that the instruction failed to mention reasonable doubt. The Court finds that Petitioner was not prejudiced because another jury instruction given by the Court adequately stated the burden proof. The Court instructed the jury on the appropriate burden of proof:

> The defendant is presumed to be innocent of the charges. This presumption continues during every stage of the trial and your deliberations on the verdict. It is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that the defendant is guilty is charged. The Government has the burden of proving the guilt of the Defendant beyond a reasonable doubt.

> The burden of proof stays with the government throughout the case. The defendant is never required to prove his innocence or to produce any evidence at all.

Crim., Given Jury Instructions at 26 (d/e 110); see also Crim., Tr. at 1713 (d/e 160). Jury instructions are considered as a whole. Conner v. McBride, 375 F.3d 643, 667 (7th Cir. 2004) ("Jury instructions are properly considered in their entirety whether alleged as the basis for overcoming procedural default, or as the basis for an ineffective assistance of counsel claim"). The instructions here, taken as a whole, informed the jury of its

responsibility to find Petitioner guilty beyond a reasonable doubt. Therefore, Petitioner cannot show prejudice from counsel's failure to object to the lack of "reasonable doubt" language in the jury instruction for Count 8.

Petitioner also argues that the Government constructively amended Count 8 by "mentioning and showing over and over again" other alleged drug houses, including 829 N. 6th St., 834 N. 6th St., and 912 N. 6th St.  Mot. at 45 (d/e 1-1).  Petitioner asserts that trial counsel should have objected to the Government's trial exhibits 7A1-2, 7B1-2, and 7C1-2 (photographs of the other alleged drug houses) as being prejudicial in violation of Petitioner's Fifth Amendment rights because the Indictment only named the 908 Chestnut address.

As noted above, a constructive amendment occurs where the "offense proven at trial was not included within the parameters of the indictment."  Remsza, 77 F.3d at 1043.  For instance, "[a]n amendment can result where a complex set of facts is presented to the jury that is distinctly different from the facts set forth in the indictment" or where the evidence at trial proves a violation of a substantive law that is materially different from the offense

charged in the indictment.  Id. at 1043 (internal quotation marks omitted).

Here, the jury instruction regarding Count 8 instructed the jury to find Petitioner guilty only if the evidence established that Petitioner maintained drug involved premises at 908 Chestnut in Quincy, Illinois—not any other location.  The Government presented evidence that Petitioner made the premises available for the purpose of storing and distributing controlled substances including crack and marijuana.  Tomeker Robertson testified that he stored crack cocaine for Petitioner at 908 Chestnut.  Crim., Tr. at 992 (d/e 157).  Carl Douglas testified regarding purchases of marijuana from 908 Chestnut.  Crim., Tr.  at 1146-47, 1161-62, 1181 (d/e 157).[4]  Joseph Ball testified that the marijuana he sold to Douglas was stored in the ceiling of 908 Chestnut.  Tr. at 1224 (d/e 158).  The offense proven at trial was the same as the offense alleged in the Second Superseding Indictment.   Therefore, no constructive amendment of Count 8 occurred.  Cf. Willoughby, 27

---

[4] At one point, the transcript references "608 Chestnut" (Tr. at 1146) but this appears to be a typographical error.  Douglas earlier testified that the house in question was next door to his mother's house at 910 Chestnut.  Tr. at 1144-46, 1161.  In addition, at other points, Douglas testifies about 908 Chestnut.

F.3d at 266-67 (finding constructive amendment where the indictment charged the defendant with use of a firearm in relation to the distribution of cocaine but no evidence linked the gun to the defendant's actual distribution of cocaine and no evidence indicated that any distribution occurred at the location where the gun was found).  Consequently, Petitioner has failed to show that counsel's performance was deficient for failing to object.

Petitioner also argues that the Government constructively amended Count 8 by soliciting testimony about manufacturing cocaine at 908 Chestnut St.  Petitioner argues that trial counsel should have objected to the constructive amendment.

However, the jury was not instructed that it could find Petitioner guilty of Count 8, maintaining a drug-involved premises, if the jury found that Petitioner manufactured a controlled substance at that location.  In fact, the Government originally proposed a jury instruction for Count 8 that provided that the jury had to find that "defendant knowingly and intentionally used or allowed others to use said premises for the purpose of the <u>manufacture</u>, distribution and possession with intent to distribute controlled substances, including cocaine, cocaine base ("crack")

and marijuana.  <u>See</u> Crim., Refused Instruction at 68 (d/e 111) (emphasis added).  The Court removed the "manufacturing" language, noting that "manufacturing" was not contained in the indictment.  Tr. at 1667 (d/e 159).  In any event, the manufacturing evidence was relevant to Count 7, which charged Petitioner with conspiracy to maintain drug-involved premises. <u>See</u> Crim., Second Superseding Indictment at 6 (d/e 41) (alleging the conspiracy included making the building available for manufacturing controlled substances and listing one of the overt acts as cooking cocaine into crack).

In sum, Petitioner has shown neither deficient performance nor prejudice with regard to trial counsel's handling of Count 8. Therefore, Petitioner is not entitled to relief on Ground Nine.

## J.     Petitioner is Not Entitled to Relief on Ground Ten

Petitioner next argues that the Government constructively amended Count 10 by aiding and soliciting testimony about manufacturing cocaine into crack cocaine.  Petitioner contends the Government presented no evidence that Petitioner aided and abetted the distribution of crack cocaine and that Count 10 was constructively amended to charge him with the manufacture of

crack cocaine. According to Petitioner, trial counsel was ineffective for not objecting to the constructive amendment.

Count 10 alleged that "[b]etween about June 23-25, 2001," Petitioner knowingly and intentionally aided, abetted, induced, procured, and willfully caused the distribution of over five grams of crack cocaine. Crim., Second Superseding Indictment at 8 (d/e 41). The Court instructed the jury as follows:

> To sustain the charge of aiding and abetting the distribution of a controlled substance as charged in Count 10 of the Second Superseding Indictment, the government must prove each of the following propositions beyond a reasonable doubt:
>
> First, that the crime of distribution of over five (5) grams of cocaine base ("crack" cocaine) was committed;
>
> Second, that the defendant aided, assisted, counseled, commanded, induced or procured another to commit said crime; and
>
> Third, that the defendant intended to help commit said crime.
>
> If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty of that charge.
>
> If, on the other hand, you find from your consideration of all of the evidence that any of these propositions has not been proved beyond a reasonable

doubt, then you should find the defendant not guilty of
that charge.

Crim., Given Jury Instructions at 12 (d/e 110); Tr. at 1725-26 (d/e
160).

Petitioner argues that he had nothing to do with the
distribution of crack cocaine by Joseph Ball to Carl Douglas that
occurred on the night of June 25, 2001. According to Petitioner,
Ball only testified that Petitioner helped him manufacture cocaine
into crack. Petitioner argues that distribution and manufacture
are two different drug offenses, and Count 10 of the Second
Superseding Indictment did not charge Petitioner with
manufacturing.

Petitioner cannot demonstrate that counsel provided
ineffective assistance because Count 10 was not constructively
amended. Proof of another crime is not an element of aiding and
abetting. United States v. Hatchett, 245 F.3d 625, 638 (7th Cir.
2001). "One can aid and abet the commission of an offense
without engaging in activity that amounts to a crime in and of
itself." Id. Nonetheless, the Government presented evidence that
Petitioner aided and abetted Ball in the distribution of crack

cocaine by helping Ball obtain the cocaine from Petitioner's source (Kevin Turner) that was then cooked into crack, all of which was for the purpose of assisting Ball in distributing crack cocaine. See Crim., Tr. at 1221 (d/e 158) (Ball testimony that the crack cocaine he sold to Douglas came from the trip he and Petitioner made a few days earlier to purchase cocaine from Kevin Turner); Id. at 1222 (Ball testimony that the crack cocaine sold to Douglas had been converted from powder to crack at Robertson's house a few days before the June 25, 2001 sale); Id. at 1218-19 (Ball testimony that the cocaine brought back from Chicago was cooked into crack and sold by the P-Stone members either by the pot method or the rotation method); Id. at 1220 (Ball testimony that Petitioner set up the rules the P-Stones went by in selling the crack cocaine); Tr. 993-94 (d/e 157) (Robertson testimony that twice in May/June 2001, Petitioner, Ramon Nelson, and Ball cooked powder cocaine into crack cocaine). The evidence that Petitioner participated in cooking the cocaine into crack cocaine did not constructively amend Count 10 but simply provided additional evidence to support the charge that Petitioner aided and abetted Ball's distribution of crack cocaine. Because no constructive amendment

occurred, Petitioner's counsel did not provide ineffective assistance of counsel and Petitioner is not entitled to relief on Ground Ten.

## K. Petitioner is Not Entitled to Relief on Ground Eleven

Petitioner raises several grounds for relief in Ground Eleven, all relating to Count 9 of the Second Superseding Indictment.

Count 9 of the Second Superseding Indictment alleged that, "[o]n or about June 25, 2001," Petitioner knowingly and intentionally distributed and caused the distribution of marijuana. d/e 41. The Court instructed the jury that:

> To sustain the charge of distribution of marijuana, the government must prove the following propositions:
>
> First, the defendant distributed marijuana;
>
> Second, the defendant did so knowingly or intentionally; and
>
> Third, the defendant knew the substance was a controlled substance.
>
> If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.
>
> If, on the other hand, you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

Crim., Given Jury Instructions at 10 (d/e 110).

Petitioner first argues that trial counsel rendered ineffective assistance of counsel because counsel did not object to the constructive amendment of Count 9 of the Superseding Indictment. Petitioner claims that the Government constructively amended Count 9 by presenting evidence of two separate controlled buys—one that occurred on June 25, 2001 between Petitioner and Douglas and one that occurred on June 27, 2001 between Joseph Ball and Douglas—when Count 9 of the Second Superseding Indictment only identified the controlled buy that occurred on June 25, 2001. Petitioner also contends that the Government told the jury in closing arguments that it could use both controlled buys to find Petitioner guilty of Count 9 and that this, too, constructively amended Count 9.

However, no constructive amendment occurred. Although the jury instruction did not contain the June 25, 2001 date, the Court also instructed the jury with the Second Superseding Indictment. Crim., Given Jury Instructions at 39-48. The instruction containing the language from the Second Superseding Indictment contained Count 9, which alleged a distribution of marijuana by

Petitioner and listed a date of "on or about June 25, 2001."

Therefore, there is no reasonable likelihood that the jury convicted

Petitioner of the distribution of marijuana that occurred on June

27, 2001 between Ball and Douglas.  See, e.g., United States v.

Hatfield, 591 F.3d 945, 951 (7th Cir. 2010) (finding no constructive

amendment where the special verdict form omitted the date of the

overdose but the jury instruction referred to the count of the

indictment that did contain the date of the overdose; therefore,

there was no reasonable likelihood that the jury convicted the

defendants based on an overdose not charged in the indictment).

Petitioner also points to the Government's statements in

closing argument as evidence of the constructive amendment of

Count 9.  In her closing argument, the prosecutor discussed the

June 25, 2001 sale and the June 27, 2001 sale of marijuana

(which she described as Ball selling the marijuana to Douglas for

Petitioner and noted that Petitioner's fingerprint was found on one

of the baggies).  Crim., Tr. at 1747 (d/e 160).  She then stated:

> So you take the two of that, you take those two
> instances, and beyond a reasonable doubt conclude that
> [Petitioner] distributed marijuana to Carl Douglas on
> June 25, 2001.  That's Count 9.

Id. at 1747-48.

This argument by the Government did not constructively amend Count 9. The Government pointed to the June 27, 2001 as further evidence that Petitioner distributed the marijuana to Douglas on June 25, 2001 and specifically asked the jury to find Petitioner guilty of the June 25, 2001 distribution. Because the focus remained on the June 25, 2001 distribution, there is no reasonably likelihood that Petitioner was convicted on Count 9 based on the offense that occurred on June 27, 2001.

Petitioner next argues that the Government's Jury Instruction No. 38A did not specifically state that it was for the offense alleged in Count 9 of the Second Superseding Indictment. Petitioner asserts that this likely confused the jury because marijuana was mentioned in other counts of the Second Superseding Indictment.

Marijuana was mentioned in several of the Counts in the Second Superseding Indictment: Count 1 (alleging that defendant knowingly engaged in a continuing criminal enterprise, namely a series of violations including distributing and possession with the intent to distribute marijuana); Count 7 (alleging conspiracy to maintain drug-involved premises and use of the building for the

purposes of storing, manufacturing, and distributing controlled substances, including marijuana); Count 8 (alleging defendant intentionally leased and made available a building for the purpose of unlawfully storing and distributing controlled substances, including marijuana). Crim., Second Superseding Indictment at 1, 6, 7 (d/e 41). However, each of Counts 1, 7, and 8 had jury instructions that specifically referred to the Count number. See Crim., Given Jury Instructions at 1, 6, 7 (d/e 110). Moreover, the jury instruction given, Jury Instruction No. 38A, specifically advised the jury that "[t]o sustain the charge of distribution of marijuana, the government must prove the following propositions[.]" Crim., Given Jury Instructions at 10 (d/e 110). Count 9 was the only offense specifically charging the distribution of marijuana. The Court also instructed the jury by providing a copy of the Second Superseding Indictment, which listed each of the Counts, including Count 9, distribution of marijuana. Id. at 39-48; Hatfield, 591 F.3d at 951. Therefore, Petitioner has failed to show he was prejudiced by the failure of Jury Instruction No. 38A to specifically refer to Count 9 because there is no reasonable

probability that the omission of the words "Count 9" in the instruction misled the jury.

Petitioner last argues, with regard to Count 9, that his trial counsel admitted Petitioner's guilt to Count 9 without Petitioner's permission. Petitioner contends that if counsel would have listened to Petitioner, read the federal discovery and trial transcripts from both of Petitioner's prior state trials, read carefully the two other audio transcripts that Petitioner gave to counsel, and listened to the actual audio tape of the June 25, 2001 controlled buy, counsel would never have conceded Petitioner's guilt on Count 9.

The Government asserts that, while it would have been prudent for defense counsel to have made a record with the Court that he discussed the matter with his client, Petitioner was not prejudiced because of the overwhelming nature of the evidence proving Petitioner's guilt, the fact that the Government did not exploit the concession, and the jury instructions given by the Court.

At the end of the trial, during closing arguments, trial counsel conceded Petitioner's guilt on Count 9. Counsel stated:

Count 9 is the charge with the marijuana. I believe its June 25th. And that was a controlled drug buy with Mr. Carl Douglas. That's where you had evidence. I think they had the physical evidence, they had like a half pound of marijuana. They had tape recordings, they had the incident witness, Mr. Carl Douglas, and they had fingerprints. Four items of evidence. That is the type of evidence that you have to require the Government to prove on each of these cases. That's all the more I'm going to argue about as to Count 9. But that gives you a good standard, a good yardstick as to what kind of burden we feel they should carry in order to meet proof beyond a reasonable doubt.

Crim., Tr. at 1762 (d/e 160). The prosecutor commented on this concession in rebuttal:

But until a few moments ago, [defense counsel] said Count 9, he is guilty of distributing the drugs alleged in Count 9.

So now we know what he is. He's a drug dealer. A marijuana dealer. And when you return this, that's one easy one for you, because they're admitting that.

* * *

And quite frankly, the law and the facts are sufficient in this case to convict [Petitioner] not only of Count 9, but of all of the counts that have been presented.

* * *

Let's talk about the other corroboration. The fingerprints in [sic] the bags. Isn't that sufficient corroboration? Not only on one bag on one sale, but also in the bag on the other sale of marijuana. And now we know that he's a marijuana dealer, we got that now; which confirms and corroborates a number of people.

> So now not only do we have fingerprints, but now we
> have his own admission by counsel. They're not
> disputing Count 9. In fact, his parting remark was find
> him not guilty of everything except Count 9. So now we
> know he is a marijuana dealer. Now we know his
> fingerprints were in [sic] those two bags, which
> corroborates what Ramon Nelson said, what Kevin
> Turner said, what Anthony Buckner said, what Joe Ball
> said. What more corroboration can there be?

Id. at 1800, 1801, 1806-07. At the close of the evidence, the

Court instructed the jury to consider each Count separately:

> Each count of the indictment charges the defendant
> with having committed a separate offense. Each count
> and the evidence relating to it should be considered
> separately, and a separate verdict should be returned as
> to each count. Your verdict of guilty or not guilty of an
> offense charged in one count should not control your
> decision as to any other count.

Crim., Given Jury Instructions at 35 (d/e 110); Tr. at 1717

(d/e 160).

The Seventh Circuit has recognized that "conceding guilt to

one count of a multi-count indictment to bolster the case for

innocence on the remaining counts is a valid trial strategy which,

by itself, does not rise to the level of deficient performance."

United States v. Holman, 314 F.3d 837, 840 (7th Cir. 2002).

Nonetheless, the decision to plead guilty is one over which the

defendant has the ultimately authority, and the attorney must

consult with the defendant and obtain his consent.  <u>Florida v. Nixon</u>, 543 U.S. 175, 187 (2004) (noting that "counsel lacks authority to consent to a guilty plea on a client's behalf").  There is no evidence in the record that Petitioner's trial counsel spoke to Petitioner about conceding guilt on Count 9.  Therefore, counsel's performance may have been deficient.

Petitioner cannot, however, show prejudice.  Petitioner has to show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different.  <u>Strickland</u>, 466 U.S. at 694.  Here, overwhelming evidence supported Petitioner's conviction on Count 9.  That evidence includes the testimony of Douglas, a participant in the distribution of marijuana; a recording of the controlled buy; and evidence that Petitioner's fingerprint was found on one of the baggies containing the marijuana.  <u>See</u> Tr. 1138, 1146-47, (d/e 157) (Douglas's testimony regarding the June 25, 2001 purchase of marijuana from Petitioner); Gov. Ex. 13T1 (audio recording of the June 25, 2001 controlled buy); Tr. at 1303 (d/e 158) (Special Agent Frazier's testimony that Exhibit 14 was the bag he took from Douglas's car on June 25, 2001); Tr. at 1361, 1365-66 (forensic scientist Gary Havey's testimony that a

fingerprint found on a plastic bag in Exhibit 14 matched

Petitioner).  And while Petitioner might argue that the concession

of guilt on Count 9 predisposed the jury to think that he was a

drug dealer when the jury considered the other counts, the Court

specifically instructed the jury to consider each count separately.

See Williams, 216 F.3d at 615 (the court assumes "that jurors

follow the court's instructions, unless there is substantial evidence

to the contrary").  Therefore, Petitioner has failed to show

prejudice, and he is not entitled to relief on Ground Eleven.

**L.      Petitioner is Not Entitled to Relief on Ground Twelve**

In Ground Twelve, Petitioner argues that trial counsel should

have objected to Exhibits 13T1 and 13T, the recording and

transcript of the recording of the June 25, 2001 controlled buy

between Douglas and Petitioner.  Petitioner claims the audio

recording was edited and tampered with because the transcript

(Ex. 13T) is different from two transcripts of the same recording

used in Petitioner's state court trials and because the recording

and transcript in this case omit the introduction and closing

statements of Special Agent Frazier as reflected in the state court

transcripts.  (Petitioner attaches the state court transcripts at d/e

9-1 at 25-36). Petitioner also argues that counsel should have objected to the admission because no chain of custody was established.

Petitioner recognizes that Douglas testified at trial that the recording was accurate but asserts that Douglas's testimony at trial was different than what was reflected in the recording (although he does not specifically identify those differences other than Petitioner's claim that Douglas actually went inside his mother's house). Petitioner also claims that Douglas went into his mother's house after allegedly obtaining the marijuana from Petitioner and could have actually gotten the marijuana from inside his mother's house rather than from Petitioner. Petitioner argues that counsel should have cross-examined Douglas about his testimony in state court and about Douglas's written statement, which did not mention that Douglas went inside his mother's house.

At trial, Douglas testified that he heard the recording of the conversations that occurred between Douglas, Ball, and Petitioner on June 25, 2001, and that the recording was an accurate recording the conversation he had with Ball and Petitioner. Crim.,

Tr. at 1151 (d/e 157).  He also testified that the transcripts he read were accurate transcriptions of the words said on the tape.  <u>Id.</u> The Court played the recording for the jury and also provided them with a transcript of the recording.  Counsel did not object to the recording or the transcript.  <u>Id.</u> at 1152.

The first time a recording was played for the jury during the trial, the Court admonished the jury that the recording and not the transcript was the evidence:

> And I want to explain to you that the recorded conversations are proper evidence and you may consider them just as any other evidence.  When the recordings are being played, you are going to be allowed to look at a transcript of the specific conversations being played. That transcript was prepared by Government agents.
>
> What you need to keep in mind is that the recordings are the evidence, and the transcripts are provided to you only as a guide to help you follow [and] listen to the recordings.  The transcripts are not evidence of what was actually said or who said it.
>
> It's up to you to decide whether the transcripts correctly reflect what was said and who said it.  If you notice any difference between what you hear on the recordings and what you read in the transcripts, you must rely on what you hear, not what you read.  And if after careful listening you cannot hear or understand certain parts of the recordings, you must ignore the transcripts as far as those parts are concerned.

Crim., Tr. at 796 (d/e 156). At the end of the case, the Court again

instructed the jurors:

> You have heard recorded conversations. Those recorded conversations are proper evidence and you may consider them, just as any other evidence.

> When the recordings were played during the trial, you were furnished transcripts of the recorded conversations prepared by government agents.

> The recordings are the evidence, and the transcripts were provided to you only as a guide to help you follow as you listen to the recordings. The transcripts are not evidence of what was actually said or who said it. It is up to you to decide whether the transcripts correctly reflect what was said and who said it. If you noticed any difference between what you heard on the recordings and what you read in the transcripts, you must rely on what you hear, not what you read. And if after careful listening, you could not hear or understand certain parts of the recordings, you must ignore the transcript as far as those parts are concerned.

Crim., Given Jury Instructions at 33 (d/e 110); Tr. 1715-16 (d/e

160). Neither the tapes nor the transcripts went back to the jury

room. Crim., Tr. at 1655 (d/e 159).

Petitioner has not shown that counsel's performance fell

below an objective standard of reasonableness or that he suffered

prejudice. Petitioner has presented no evidence that the tapes

were tampered with or edited. The alleged differences between the

transcript in this case and the transcripts of the recording in the state court case were immaterial and not a basis for objecting to the admission of the recording, particularly in light of the Court's instruction to the jury that the recording, not the transcript, was the evidence.  <u>See</u>, <u>e.g.</u>, <u>Williams</u>, 216 F.3d at 615 (the court assumes "that jurors follow the court's instructions, unless there is substantial evidence to the contrary"); <u>McMillian v. United States</u>, No. 08 C 5828, 2010 WL 3526500 , at *5 (N.D. Ill. Sept. 1, 2010) (finding that petitioner suffered no prejudice from counsel's failure to object to the tapes  based on their inaudibility or the allegedly inaccurate transcripts where the court gave the limiting instruction that the tape was the evidence and the petitioner failed to point to anything in the record showing that a significant portion of the tape was inaudible such that the entire recording should have been considered untrustworthy).  Therefore, counsel's performance did not fall below an objective standard of reasonableness and Petitioner has not shown prejudice.

Petitioner also argues that counsel should have objected to the recordings because the Government did not establish a chain of custody for the recording.  Counsel is presumed to have

provided adequate assistance and exercised reasonable professional judgment, and it is Petitioner's burden to show that counsel's performance was deficient.  <u>Strickland</u>, 466 U.S. at 690; <u>Burt v. Titlow</u>, 134 S. Ct. 10, 17 (2013).  Petitioner's trial counsel did not object to the tape recordings, and the Court presumes that this was a reasonable exercise of professional judgment absent evidence to the contrary.  Petitioner points to no evidence to suggest that counsel's decision was not a reasonable exercise of professional judgment.  In addition, a break in the chain of custody goes to the weight of the evidence, not its admissibility.  <u>United States v. Cannon</u>, 539 F.3d 601, 604 (7th Cir. 2008).  Petitioner therefore cannot show prejudice, particularly in light of the extensive evidence on Count 9, the distribution of marijuana on June 25, 2001.  For all of these reasons, Petitioner is not entitled to relief on Ground Twelve.

### III. CONCLUSION

For the reasons stated, Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (d/e 1) is GRANTED IN PART and DENIED IN PART.

(1) Petitioner is not entitled to relief on Grounds One, Two,

Three, Four, Five, Six, Seven, Nine, Ten, Eleven, and Twelve of his Motion. Because Petitioner has not made a substantial showing of the denial of a constitutional right, the Court denies a certificate of appealability on those grounds under Rule 11(a) of the Rules Governing Section 2255 Proceedings. <u>See</u> 28 U.S.C. § 2253(c)(2).

(2) The Court GRANTS Petitioner's Motion on the issue raised in Ground Eight, that defense counsel rendered ineffective assistance of counsel for failing to object to the constructive amendment of Counts 2, 3, and 4. Counts 2, 3, and 4 of the Second Superseding Indictment in Case No. 04-30046 shall be VACATED. Petitioner is entitled to resentencing in Case No. 04-30046. A separate order shall be entered in Case No. 04-30046.

(3) This case is CLOSED.

**ENTER: March 27, 2017**

**FOR THE COURT:**

            *s/Sue E. Myerscough*
            **SUE E. MYERSCOUGH**
            **UNITED STATES DISTRICT JUDGE**